**Eduardo E. GAUTIER, Plaintiff,**

v.

**James D. WATKINS, Secretary, U.S. Department of Energy, Defendant.**

Civ. A. No. 87–1784.

United States District Court, District of Columbia.

Oct. 1, 1990.

David H. Shapiro, Jennifer R. Levin, Kator, Scott & Heller, Washington, D.C., for plaintiff.

Daniel J. Standish, Asst. U.S. Atty., Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. PRATT, District Judge.

Plaintiff brought this action against the Secretary of the Department of Energy under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16 *et seq.* Plaintiff alleges that the agency discriminated against him on the basis of his race when, in 1978, instead of promoting him, the agency selected a black person from outside the agency to fill a GS–14 personnel management specialist position. Trial before the Court took place on July 26, 1990. On the basis of the trial record, including the testimony of witnesses and exhibits, the Court enters the following.

### *Findings of Fact*

1. Plaintiff is a non-black who was employed as a GS–201–13 personnel management specialist by the Department of Energy (hereinafter "DOE") and its predecessor agencies the Federal Energy Office and Federal Energy Administration, from January 1974 until his retirement in September 1988.

2. In 1978, the division where plaintiff worked was known as the Executive Resources Management Division. Plaintiff worked in the Operations Branch of the Division. His first-level supervisor was the branch chief, Marlin Burkhart. His second-level supervisor was the division director, Eugene Beach.

3. On April 27, 1978, DOE issued Merit Staffing Vacancy Announcement No. 78–587, which advertised a GS–201–14 personnel management specialist position in the branch where plaintiff worked. The vacancy announcement's closing date was May 18, 1978.

### A. *Plaintiff and his qualifications*

4. Plaintiff made a timely application for the position advertised in Vacancy Announcement No. 78–587.

5. Plaintiff was placed on the best qualified list of applicants for promotion to the position under merit staffing guidelines, and his name was referred to the selecting official.

6. Plaintiff's duties in his GS–13 position included working on all of the different types of personnel actions that were processed in the Operations Branch, which included supergrade positions, Schedule C appointments and experts and consultants. However, the great majority of plaintiff's work involved the evaluation of supergrade

positions and the individuals' qualifications for such position.

7. In 1978, federal agencies were required to obtain the approval of the then-Civil Service Commission before supergrade positions (i.e. grades GS–16, GS–17 and GS–18) could be established or filled. Plaintiff's duties involved preparing DOE's requests for Civil Service Commission approval of supergrade positions and of candidates that agency management desired in such positions, evaluating the duties of the positions to ensure that each would support a supergrade, and evaluating the candidate who had been selected for each position to ensure that he was qualified for it.

8. Plaintiff received one performance appraisal prior to 1978. The performance appraisal covered the period April 1, 1974 to March 31, 1976. It was signed by his supervisor, Mr. Burkhart, who was listed on the appraisal as the rating official. It was also signed by his second-level supervisor, Eugene Beach, who was listed as the reviewing official. On the performance factors "quality of work," "quantity of work," "ability to get along with others" and "initiative and resourcefulness," plaintiff received the highest possible evaluation, "always exceeds standards." On the remaining factors of "dependability" and "work habits and attitude," he received the second-highest evaluation, "usually exceeds standards." Based on that evaluation, plaintiff received an overall rating of "satisfactory."

9. Mr. Burkhart also completed a Supervisory Appraisal of Demonstrated Performance in connection with Mr. Gautier's application for the advertised GS–14 personnel management specialist position. He rated plaintiff as being a "3" (with 4 being the highest) on four of the ranking factors, and as "2" on two of the factors. The description of these ratings states that a "4" describes "consistently superior" performance in the area, while a "3" indicates that the employee "frequently exceeds normal expectations." A rating of "2" denotes that the employee merely "meets all reasonable expectations." The Court notes that these ratings are somewhat less favorable than the ratings Burkhart had given plaintiff in the most recent performance appraisal of 1976.

B. *Edgar Weathersby, the selectee, and his qualifications*

10. Edgar Weathersby, who is black, also applied for the position advertised in Vacancy Announcement No. 78–587. His application was received on May 23, 1978, five days after the closing date of May 18, 1978. When he applied for the vacancy, Weathersby was a GS–201–14 personnel management specialist at the Civil Service Commission. He had been promoted to the GS–14 level in April 1978, the previous month.

11. Weathersby's name appeared on a certificate of individuals eligible for reassignment without application of the merit staffing guidelines applicable to plaintiff.

12. The selecting official for the vacancy was Marlin Burkhart, plaintiff's immediate supervisor.

13. The selecting official was of the view that Mr. Weathersby's knowledge of the Civil Service Commission procedures and regulations would help dealings both with the Department of Energy and the Civil Service Commission, stressing Weathersby's superior experience at the Civil Service Commission.

14. Burkhart selected Weathersby because, in Burkhart's judgment, he was the best qualified for the job. In making this selection, Burkhart emphasized that he was very familiar with Weathersby's work at the Civil Service Commission and considered Weathersby's references and appraisal by his immediate superior.

15. Eugene Beach, the concurring official, who was plaintiff's second level supervisor, offered testimony entirely consistent with the testimony of Mr. Burkhart. Mr. Weathersby had superior qualifications because of his experience at the Civil Service Commission, the agency that reviewed all supergrade packages submitted by the Department of Energy for sufficiency. He noted that Mr. Weathersby enjoyed an excellent reputation, and that Mr. Burkhart, the selecting official, commented favorably

on Mr. Weathersby's work. He also noted that the Department of Energy was expected to receive authority to process its own supergrades rather than forwarding them to the Civil Service Commission, and Mr. Weathersby's experience in that area was expected to be particularly helpful.

16. These assessments were reinforced by the evidence regarding Mr. Weathersby's qualifications and experience at the time he applied for the personnel management specialist position. He was a senior analyst at the Civil Service Commission, grade GS-14. He frequently met with high level officials of his assigned agencies, including the Department of Energy, to discuss the supergrade packages that they had submitted, and he interviewed prospective appointees and their bosses.

17. The selectee's duties included reviewing supergrade packages from the Department of Energy, including packages prepared and submitted by plaintiff. He was experienced in a wide variety of other personnel-related matters, including those involving experts and consultants. Prior to his six years as a personnel management specialist at the Civil Service Commission, he held several other positions in the field of federal personnel management.

18. Weathersby's experience was both broad and deep. On the other hand, plaintiff, although qualified for the position, did not begin to have the superior experience possessed by Weathersby. From our observation of plaintiff as a witness, he impressed the Court as a dedicated, conscientious and well-meaning public servant, who had definite limitations in experience and potential. We find that Weathersby's qualifications were clearly superior to those of plaintiff.

19. It is plaintiff's consistent claim that he was not selected because of his race and that the only reason Weathersby was selected was because he was black. Plaintiff relies in great part on the statement of Beach, the concurring official, that race was a "primary" reason for Weathersby's selection. From a close reading of the entire statement of Beach made at the EEO hearing, and having considered Beach's testimony at trial and his explanation of this statement and the context in which it was given, we are completely satisfied that Weathersby's selection was based on merit.

20. Nor is there any credible evidence that preselection occurred in this case. Indeed, the unrebutted testimony establishes that defendant invited applications from numerous sources, including the Personnel Office where plaintiff worked.

21. Plaintiff's suggestion that there is evidence of the consideration of improper factors in the selection process is particularly weak when he contends that defendant somehow violated the Merit Promotion Plan when Mr. Burkhart selected Mr. Weathersby. The testimony is completely unrebutted that the deadline for submitting applications in the Vacancy Announcement was not applicable to Mr. Weathersby, who applied as a lateral transfer. Rather, the Merit Promotion Plan, which governed such deadlines, specifically excepted the transfer of an employee into the Department of Energy in the circumstances presented in this case. It was not necessary that the Vacancy Announcement be cancelled.

22. Even more significant, if defendant truly had preselected Mr. Weathersby and wanted to get him at any cost because of the color of his skin, the selecting official could have foregone the competitive selection process completely and merely transferred Mr. Weathersby into the job. The selecting official was aware of this option but did not employ it. Thus, this evidence further buttresses the conclusion that Mr. Weathersby was selected on the basis of entirely proper factors.

*Conclusions of Law*

1. This Court has subject matter jurisdiction of this action, 42 U.S.C. § 2000e–16 *et seq.*

2. The Court previously has determined that it will accept the finding of the Equal Employment Opportunity Commission ("EEOC") that discrimination was present in the selection process. Order filed May

29, 1990.[1] We therefore have assumed that for the purposes of the case, plaintiff has made a *prima facie* case of discrimination. In addition, following the submission of memoranda by the parties, the Court determined that the "controlling issue at trial shall be whether defendant can demonstrate by a preponderance of the evidence that it would have made the same decision, in the absence of discrimination, in the selection process at issue in this action." Order filed July 18, 1990 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). Accordingly, the evidence is weighed applying this standard.

3. The Court finds on the basis of the preponderance of the evidence set forth above that defendant would have selected Mr. Weathersby regardless of whether race was considered in the selection process. The testimony of the selecting and concurring officials, the testimony of Mr. Weathersby, and the documentary evidence proffered by the parties, lead directly to the conclusion that Mr. Weathersby was the best-qualified person for the position of personnel management specialist. Moreover, the evidence demonstrates clearly that Mr. Weathersby's qualifications were carefully weighed and considered at the time of the selection by both the selecting and concurring officials. The Court simply cannot say that the reason Mr. Weathersby was selected was, as plaintiff would have it, the color of his skin.

For the foregoing reasons, the Court enters judgment for defendant.

An order consistent with the foregoing has been entered this day.

### ORDER

This case was tried before this Court on July 26 and 27, 1990. The Court has considered the evidence presented, the arguments of both parties, and the applicable legal standards. For the reasons stated in the accompanying Findings of Fact and Conclusions of Law entered this day, it is this 1st day of October, 1990,

ORDERED that judgment is entered in favor of defendant on all claims raised by plaintiff in this action; and it is

FURTHER ORDERED that this case is dismissed with prejudice.

---

1. Plaintiff has asked the Court to include in its findings in this case selective findings from the administrative proceedings that preceded the filing of the complaint in this action. Such a course would be inappropriate since plaintiff did not seek admission of any of this matter into evidence at trial, nor would it necessarily have been admissible. The Court's determination that discrimination existed in the process at issue here was made on the basis of *pretrial* submissions, and the record with respect to that determination will stand. It is not necessary to decide whether the record *after* trial would support such a conclusion.

The Court also notes that plaintiff emphasizes the passage of time between the selection at issue and the EEOC's final decision. However, plaintiff was free to abandon the administrative process long ago in order to seek relief in this Court. *Grubbs v. Butz,* 514 F.2d 1323 (D.C.Cir. 1975). Apparently he chose not to do so.